# MITCHELL v. HENNION.

# HENNION v. MITCHELL.

Patent Appeals Nos. 4802, 4803.

Court of Customs and Patent Appeals.
May 22, 1944.

Trenton Meredith, of Jersey City, N. J. (Richard K. Stevens, of Washington, D. C., Mason Trowbridge, of Jersey City, N. J., and George H. Mortimer, of New York City, of counsel), for Mitchell.

Walter C. Wheeler, of Wilmington, Del. (Chester H. Biesterfeld, of Wilmington, Del., of counsel), for Hennion.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

GARRETT, Presiding Judge.

The decision in this case was rendered March 20, 1944. The party Mitchell filed petition for rehearing which has been duly considered and same is denied on the merits, but granted in order to correct two expressions inadvertently used in the original opinion.

We have before us here appeals from the decision of the Board of Interference Examiners (to which we hereinafter refer as the board) in a patent interference proceeding.

Five counts (1 to 5, inclusive) are involved. The board awarded priority to the party Hennion upon counts 1, 2, 3, and 4, and the party Mitchell appealed as to that award. Priority upon count 5 was awarded the party Mitchell, and the party Hennion appealed as to that award.

The proceedings in the Patent Office are embraced in one record certified to us following the respective appeals.

The counts read as follows:

"1. In the process of making a sulfonated organic compound of the heterocyclic series by the action of sulfuric acid on a compound of said series, the step which comprises adding boron trifluoride to the reaction mixture.

"2. In the process of making a sulfonated organic compound from the group consisting of the benzine and naphthalene series by the action of sulfuric acid on a compound of said series, the step which comprises adding boron trifluoride to the reaction mixture.

"3. The process which comprises making a sulphonating mixture comprising sulphuric acid, boron trifluoride and an organic compound of the group consisting of compounds of the aromatic and heterocyclic series; and maintaining the reaction mixture at sulphonating temperatures until the organic compound is sulphonated.

"4. The process which comprises sulphonating an organic compound of the aromatic series with sulphuric acid in the presence of boron trifluoride.

"5. The process which comprises sulphonating an organic compound of the group consisting of compounds of the aromatic and heterocyclic series with sulphuric acid in the presence of an inert solvent and boron trifluoride."

The interference was declared between an application of the party Mitchell, serial No. 307,257, filed December 2, 1939, and an application of the party Hennion, serial No. 320,013, filed February 21, 1940. As originally declared, it involved only counts 1 and 2, which correspond, respectively, to claims 31 and 32 of the Mitchell application and claims 3 and 5 of the Hennion application. Subsequently (after proceedings in the Patent Office not here involved), counts 3, 4, and 5 were added upon motion of the party Mitchell, and the interference was redeclared.

■ The burden rested upon Hennion as the junior party to establish priority by a preponderance of evidence.

In describing the invention the board stated:

"The subject matter of this interference relates to the process of sulphonating organic compounds by means of sulphuric acid in the presence of boron trifluoride.

"There are five counts of which count 1 is drawn to the sulfonation of a compound of the heterocyclic series; count 4 to the aromatic series; count 2 to the benzene and naphthalene series and counts 3 and 5 to the aromatic and heterocyclic series"

Testimony was taken by both parties and numerous documentary exhibits were placed in evidence, so that the record is a voluminous one, and the briefs filed on behalf of the respective parties are very elaborate, containing much technical matter relating to chemical elements and formulas.

Much of the testimony is also quoted in the respective briefs.

■ Aside from a question raised by the party Mitchell respecting the sufficiency of the party Hennion's reasons of appeal relating to count 5, which will be discussed later in connection with that appeal, the issues involve questions of fact. The board reviewed the evidence in extenso, quoting material parts of it verbatim, and stated the reasons for its conclusions deduced therefrom. Under such circumstances the burden rests heavily upon the respective appellants to demonstrate error in the board's findings of fact.

We deem it unnecessary to set forth in detail the claims made in the respective preliminary statements.

The board held that the junior party Hennion had established actual reduction to practice of counts 2 and 4 and "at least part of the subject matter of count 3," as

early as May 20, 1938, and of counts 1 and 3 (which latter the board pointed out "includes a limitation to a heterocyclic compound in the form of a Markush grouping") on or prior to March 8, 1939. It was also held that counts 2 and 4 were additionally reduced to practice by Hennion in June 1938. The foregoing dates were prior to the filing date of the party Mitchell's application, December 2, 1939. With respect to count 5, the board pointed out that the party Hennion alleged no reduction to practice of it prior to his filing date of February 21, 1940, which was subsequent to the Mitchell filing date.

The party Mitchell alleged conception and reduction to practice of all the counts in October 1937, but as to count 1 the board said:

" * * * in his brief Mitchell claims no disclosure of count 1 until it was discussed with his attorney who was preparing his patent application apparently sometime in August, 1939. Mitchell claims no actual reduction to practice of count 1 and relies instead on his filing date for a constructive reduction to practice thereof."

The statement so made is not challenged in the reasons of appeal before us, but the award of priority on the count to the party Hennion is challenged, it being alleged that the board erred in holding that Hennion reduced count 1 to practice "by sulphonation of the compound carbazole."

The board after a comprehensive review of the testimony on behalf of both parties summarized its findings as follows:

"It would appear from this testimony that in spite of the many authorities relied upon, the conditions are sufficiently complex so that the final conclusion must nevertheless be largely a matter of opinion. In view of the fact that no actual test for the presence of boron fluoride has been shown and the further fact that Ross' conclusion as to its presence is largely opinion it must be held that Mitchell has not established with the necessary degree of certainty that his experiment of October 26, 1937 met the limitation to the catalyst in the counts.

"A summary of the issues considered in connection with Mitchell's alleged reduction to practice discloses that Mitchell has failed to present the necessary corroboration of his own work as well as having failed to establish that his starting material and catalyst met the limitations of the counts. Mitchell cannot therefore be credited with either a conception or reduction to practice of counts 2 to 5 in October 1937. Since the run on October 26, 1937 is the only basis for an actual reduction to practice of counts 2 to 5 alleged by Mitchell it follows that he is limited to his filing date with respect to these counts. In connection with count 1 Mitchell, in his brief, contends for no date earlier than August 1939 for conception and claims no reduction to practice prior to his filing date in December 1939.

"Hennion has already been accorded an actual reduction to practice of counts 1 to 4 prior to Mitchell's filing date and also prior to August, 1939. It follows that Hennion must prevail with respect to counts 1 to 4, whereas Mitchell, the senior party, must prevail with respect to count 5 since Hennion's alleged early conception thereof has not been established and he alleges no reduction to practice of count 5 prior to his filing date."

It appears that the party Hennion (whose application stands assigned to E. I. duPont de Nemours and Company, Wilmington, Delaware), was at the time of his activities here involved, an assistant professor of chemistry and chemical engineering at the University of Notre Dame, South Bend, Indiana, and that he carried on research work in organic chemistry under the direction of and in cooperation with Dr. Richard R. Vogt, who was head of the university's department of chemistry. During the spring of 1937 an assistant of Hennion conducted certain experiments which were recorded in a notebook, a photostat of a portion of one page of which, dated May 3, 1937, was introduced in evidence as Hennion's Exhibit 1, and this was relied upon, together with the testimony of Dr. Vogt as to conversations between them, to establish conception of the invention. The board held the evidence insufficient to establish such conception, and since it is not seriously contended before us that the board erred in so holding, we need not further consider it. We have stated it only as a part of the background of Hennion's case.

The award to him of the respective dates for conception and reduction to practice of counts 1 to 4, as above set forth, was based by the board largely upon his testimony and that of a witness by the name of Robert J. Thomas, supported by notations from

notebooks placed in evidence. Thomas, at the time of testifying, seems to have been employed by Hennion's assignee as a research chemist, but at the time of his activities here involved he was a graduate student in the Department of Chemistry at Notre Dame University, seeking the degree of Ph.D. He began his studies for that degree in September 1937, and among the requirements for obtaining the degree was that of submitting a dissertation in his "major field of study." At the suggestion of Dr. Hennion he selected for the basis of his dissertation "an investigation of sulfonation reactions promoted by boron fluoride," and, thereafter, under the general supervision of Dr. Hennion, he carried out various experiments.

The board states, inter alia:

"Both Thomas and his superior Hennion testify at length concerning this work and identify many pages of Thomas' notebook devoted thereto. Until the date of January 14, 1938, however, there is no recorded activity that directly concerns the counts in issue. Thomas testified that on this date, January 14, 1938 he sulfonated benzene with sulfuric acid using boron fluoride (sic) as a catalyst (Questions 69 and 70, page 59). This run is recorded on page 123, notebook 16, which page is again repeated in notebook 3, page 58. It is noted at this point that the records legitimately term $BF_3$ as boron trifluoride or boron fluoride.

"A more complete sulfonation run on benzene using sulfuric acid and boron fluoride as a catalyst is recorded on pages 65 to 67, notebook 3. Thomas testifies with considerable detail as to this run which was apparently started February 2, 1938 and the sodium benzene sulfonate, a salt of the benzene sulfonic acid product, was isolated on February 10, 1938 (Questions 99 and 100, page 65).

"He summarizes the results of the two runs by stating that he concluded that sulfonation of benzene took place in the presence of sulfuric acid and boron fluoride and that the results were superior to that of an earlier test run wherein no boron fluoride was used. (Questions 106 and 107, page 67; XQs. 93 and 94, page 123 and question 149, page 131.)

"Although Thomas' determination of the exact percentage yield in each case may be open to question, the relative yield secured in the two cases appears to be reasonably well established. (XQ. 126, page 128 and XQs. 144 and 145, pages 130 and 131.)

"Following several successive runs on the sulfonation of benzene, Thomas testified that on April 6, 1938 he commenced sulfonating toluene using sulfuric acid and boron fluoride. Several sulfonation runs on toluene are recorded, the results of one such run appearing on pages 108 to 110 of notebook 3. In this instance, the resulting acids were separated (Questions 120, page 71) and the final net weights of ortho and para toluene sulfonic acids is evidently recorded on page 110 of notebook 3 (Exhibit 3). This experiment is dated '4/21/38' and the last entry is indicated as '5/4'. The two dates evidently represent April 21 and May 4, 1938 respectively.

"Following the sulfonation runs on toluene, pages 111 and 112 of exhibit 3 relate to the sulfonation of naphthalene (Question 120, page 71) and page 119 relates to the analysis of the resulting acid. These pages indicate that sulfonation took place and that naphthalene sulfonic acid was formed. Although the testimony of Thomas relating to the sulfonation of toluene and naphthalene is brief, yet Thomas has supplemented this testimony further with a blanket statement relative to his notebooks and their contents *. * *."

The testimony so alluded to was quoted verbatim and the board continued:

"In view of this additional testimony together with the reasonably complete and authentic nature of Thomas' notebooks, it is believed that the sulfonation reactions considered must be held to have been satisfactorily carried out on the dates indicated.

"It is accordingly held that Hennion is entitled to a date for actual reduction to practice of counts 2 and 4 at least as early as May 20, 1938 which is the last date indicated on the page 119 relating to the sulfonation of naphthalene. Prior to this date he had three recorded sulfonation runs on benzene, one on toluene and one on naphthalene. Since benzene and toluene are both examples of compounds of the benzene series, Hennion had an actual reduction to practice of the processes of counts 2 and 4 and at least part of the subject matter of count 3 on or before this date."

With respect to the award to Hennion of counts 2, 3, and 4, a number of the errors alleged in Mitchell's reasons of appeal are

so general in their nature that they fail to meet the requirements of our rules and hence we omit any detailed analysis of them.

The most specific allegations of error are found in reasons of appeal Nos. 6 and 7, which read as follows:

"6. The Board erred in according sufficient weight and credibility to the testimony of the witness, Thomas, to sustain the burden of proof faced by the junior party, Hennion.

"7. The Board erred in holding that the testimony of the witness Thomas 'is adequate to establish his activities in behalf of Hennion.'"

We see no reason to question the credibility of Thomas, and we think there was no error in the weight which was accorded his testimony. Also, we think his evidence is entirely adequate to establish that his activities were in behalf of Hennion. It was pointed out by the board, in substance, that it was not material as a matter of law that Hennion himself was not present at all the experiments and tests made for him by Thomas. Thomas is himself the corroborating witness of Hennion, the inventor, and not Hennion the corroborating witness of Thomas, his agent.

In his reason of appeal No. 9, Mitchell alleges that the board "has made many statements in its decision which are contrary to fact, thereby indicating an unwarranted reliance upon an incorrect or an incomplete understanding of the evidence adduced," and cites what are claimed to be examples of such statements.

The statements so cited have been scrutinized by us and compared with the testimony with the result that we do not regard the allegation that they "are contrary to fact" justified by anything found of record. It may be added that even if the board had erred in making the statements cited, they do not embrace matters which have any particular bearing on the merits of the controversy as it is presented to us.

With respect to the award of reduction to practice of count 1 to Hennion, Mitchell alleges, in substance, in his reason of appeal No. 10, that the subject matter of the count was not reduced to practice by "sulphonation of the compound carbazole."

The gist of Mitchell's contention on this phase of the case appears to be that it was not satisfactorily shown that the sulfuric acid group of chemicals is on the heterocyclic ring.

The board's discussion of this phase of the case is as follows:

"The sulfonation of carbazole, a heterocyclic compound is related on page 12 of notebook 37 (exhibit 5) and is dated February 23, 1939. This date and activity is testified to by Thomas who stated further that the isolation of the product was commenced on February 25, 1939. According to the notebook it was apparently completed March 8, 1939 (Questions 168-9, page 83) after which Thomas found that the carbazole had been disulfonated.

"This sulfonation of carbazole is attacked by Mitchell as not representing an actual reduction to practice of the process of count 1. He bases his argument principally on the ground that it has not been shown that the sulfonic acid group is actually on the heterocyclic ring.

"An analysis of the process of count 1 as well as count 3 which also includes a limitation to a heterocyclic compound in the form of a Markush grouping, is believed to emphasize that this argument is without merit.

"The counts are drawn to a process wherein the reference to the type of compound sulfonated is given as: '—organic compound of the heterocyclic series—' (count 1). Since carbazole is classified in the art as a 'heterocyclic compound' (Organic Chemistry, Whitmore, 1937, pages 874-5, and Hackh, Chemical Dictionary, 2nd edition, 1937, page 184), it follows that the process related by Thomas wherein he sulfonated carbazole with sulfuric acid and in the presence of boron fluoride meets the limitations of both counts. The counts contain no limitations with respect to the relative position of the sulfonic acid groups on the heterocyclic molecule.

"It is to be noted, in this connection, that the sulfonation of carbazole is the only example of the sulfonation of a heterocyclic compound given in Hennion's application involved in this interference. Since count 1 originated in this Hennion application, the same example of the sulfonation of carbazole as carried out by Thomas should be adequate as a basis for awarding priority to this same count."

The question posed by Mitchell's reason of appeal No. 10 above referred to is one of a technical character, and no authority has been produced by him which would

justify our holding that the board erred in its analysis and disposition of count 1, in the light of the authorities on chemistry cited by it.

■ It is our conclusion that the board did not err in awarding Hennion reduction to practice of counts 1, 2, 3, and 4 on the dates named in its decision, all of which were prior to the filing date of the Mitchell application.

It follows from the last-stated conclusion that if Mitchell (whose application, we understand, is assigned to the Colgate-Palmolive-Peet Company in whose research laboratories he was employed at the time of his activities here involved) be confined to his filing date for both conception and reduction to practice the award of priority to Hennion on counts 1, 2, 3, and 4 was proper, and the board's decision in that regard should be affirmed.

Therefore, we consider next the question of whether the board erred in confining Mitchell to the filing date of his application as to those four counts, count 5 being the subject of separate consideration.

The board did not err unless it be held that Mitchell actually reduced to practice the subject matter of counts 1, 2, 3, and 4 prior to the dates awarded Hennion.

As to count 1, it is clear from the record before us that Mitchell may not claim any date prior to the filing date of his application. That is sufficiently shown by matters above recited and no further discussion of it is necessary.

We, therefore, limit our discussion for the time being to counts 2, 3, and 4.

Mitchell claims that the evidence introduced in his behalf is sufficient to establish conception and actual reduction to practice of the counts in October 1937. The evidence presented consists of the testimony of Mitchell himself and seven other witnesses, together with a number of documentary exhibits. Five of the witnesses (George E. Bucci, Paul Joseph Kopp, Seymour Yolles, Benjamin S. VanZile, and John Ross) were fellow workers with Mitchell in the laboratories of Mitchell's assignee. Another (Frank W. Hall, whose testimony was stipulated) was in May and June of 1937 employed by the Texas Company. The purport of his testimony is that in June 1937, in response to an order therefor, he shipped certain oil materials to the Colgate-Palmolive-Peet Company. The seventh witness (Ralph Carlisle Smith,

whose testimony also was stipulated) was the attorney who prepared the Mitchell application.

We again quote from the decision of the board:

"The greater portion of this testimony deals with a sulfonation run allegedly made by Mitchell on October 26, 1937 wherein he sulfonated a certain petroleum fraction referred to as 'Cut No. 8', by means of sulfuric acid and in the presence of sodium borofluoride as a catalyst. Since Mitchell relies upon this run for an actual reduction to practice of counts 2 to 5 there arise, in addition to the question of corroboration, the additional issues of whether the aforementioned 'Cut No. 8' meets the limitations of the aromatic compounds recited by the counts and further, whether the *sodium borofluoride* used by Mitchell meets the limitation to *boron fluoride* to which all of the counts are drawn." (Italics ours.)

We direct attention to the words above italicized.

In response to a question asked during his direct examination Mitchell stated the meaning of "Cut No. 8" to be "the material that was received from an oil company from the distillation of a transformer oil extract, Cut No. 8 being one of the fractions from this distillation," and further stated that the experiment of October 26, 1937, "was a sulphonation of Cut No. 8, which was mineral oil liquid $SO_2$ extract, with sulphuric acid in the presence of sodium *boro-fluoride*." (Italics ours.)

Other of his testimony was as follows:

"Q. 85. Why did you use sodium boro-fluoride in this reaction? A. Sodium boro-fluoride was used in this reaction *to replace the original idea of using boron trifluoride*." (Italics ours.)

He further testified that the correct formula for *sodium boro-fluoride* is "$NaBF_4$." This, of course, is different from the *boron trifluoride* formula, which, he stated, is "$BF_3$."

It does not appear from any evidence of record that Mitchell ever used boron trifluoride ($BF_3$) in any of his experiments. Under the limitations expressed in all the counts that material seems to be one of the elements required as a "starting material." It may be that in the course of reaction with other chemical elements the sodium boro-fluoride ($NaBF_4$), which he states he did use, resulted in the production of "some boron trifluoride," but it does not seem to

us that such a result would meet the definite requirement of the counts.

Our decision respecting counts 2, 3, and 4 might very well rest upon the above finding, but it is not improper to say that we find no error in the board's holding that Mitchell's testimony was not sufficiently corroborated to meet the "corroboration" rule even with respect to his experiments carried out with the use of sodium borofluoride, nor would we feel justified in reversing the board's finding that the evidence is not sufficient to show that Mitchell's experiment met the limitations respecting aromatic compounds.

The decision of the board awarding Hennion priority as to counts 1, 2, 3, and 4, therefore, will be affirmed.

As has been stated, priority on count 5 was awarded Mitchell, and Hennion appealed.

In his preliminary statement Hennion made no claim of an actual reduction to practice of this count and relied upon his filing date of February 21, 1940, for constructive reduction to practice. The claim as to conception embraced in the statement is indefinite as to date, but it fairly may be construed to mean that conception was claimed because of acts and experiments alleged to have taken place "beginning in the month of September 1937 and extending through the month of August 1939." The board held, in effect, that conception during that period had not been established and confined Hennion to his filing date for both conception and reduction to practice. The award of priority, therefore, was made to Mitchell (who also was confined to his filing date—December 2, 1939) because he was the senior party.

In respect to Hennion's appeal (No. 4803) we are confronted by a question growing out of a motion by Mitchell to dismiss it on the ground that Hennion's reasons of appeal, as recited in the record, are insufficient to confer jurisdiction on this court to hear and determine it.

Much of the time allowed counsel for oral argument before us was devoted to arguments pro and con on this question.

The motion was filed October 29, 1943, and upon consideration of it at chambers, the court determined that action upon it should be postponed until the case was argued on the merits and that decision upon it would be rendered in connection with our final decision.

Since the motion raises the question of jurisdiction it is necessary that we pass upon it, and in order to render our decision intelligible we deem it proper to quote verbatim the reasons of appeal as they appear in the notice of appeal. It is alleged that:

"The board of interference examiners erred:

"(1) In awarding priority of invention to Mitchell as to Count 5.

"(2) In not awarding priority of invention to Hennion as to Count 5.

"(3) In awarding priority of invention to Mitchell as to Count 5 for the sole reason that Mitchell filed his patent application serial No. 307,257 in the U. S. Patent Office before the date of Hennion's constructive reduction to practice of Count 5.

"(4) In awarding priority of invention to Mitchell as to Count 5 without finding that Mitchell had a conception of the process defined in Count 5 when Mitchell filed his U. S. application.

"(5) In awarding priority of *Invention* to Mitchell as to Count 5 without first finding whether or not Mitchell had a conception and constructive reduction to practice of said count prior to Hennion's conception and constructive reduction to practice thereof. (Italics quoted.)

"(6) In not finding that Mitchell's specification does not set forth a conception and constructive reduction to practice of the invention defined in Count 5.

"(7) In not finding that the basis for Count 5 must have been derived by Mitchell from a reading of Hennion's specification after the same became available to Mitchell and before Mitchell filed his motion under Rule 109 to add Count 5 to the issue.

"(8) In not finding that Mitchell did not have an unequivocal disclosure in his original specification of a process of sulfonation consisting of the use of the combination, sulfuric acid, an inert solvent, boron trifluoride and a hydrocarbon of the aromatic or heterocyclic series.

"(9) In not holding that Mitchell did not disclose in his original patent specification a sulfonation process for sulfonating aromatic or heterocyclic compounds in the presence of an inert solvent and boron trifluoride.

"(10) In not holding that Mitchell's alleged constructive reduction to practice and conception are confined to sulfonation in the presence of liquid sulfur dioxide;

and not having conceived of a process of sulfonation in the presence of 'an inert solvent' generally, Mitchell cannot be awarded priority of an invention which he did not conceive.

"(11) In not applying to Mitchell's alleged conception and reduction to practice a test for conception embracing the principles set forth in Mergenthaler v. Scudder, 11 App.D.C. 264."

At the outset, it should be remembered that Hennion, the junior party, made no claim of actual reduction to practice of count 5 and relied upon his filing date for constructive reduction to practice. In order to prevail, therefore, it was incumbent upon Hennion to prove conception at some prior time coupled with diligence during the critical period relative to the filing date of the senior party, Mitchell.

The board expressly held that his *"alleged early conception * * * has not been established"* (Italics ours), and, of course, the board had no occasion, under such holding, to consider the question of diligence.

Upon this salient (we might say all important to Hennion) holding no one of the reasons of appeal, by any stretch of imagination, can reasonably be construed as an allegation of error. Reasons of appeal Nos. 1 and 2 are merely formal and specify nothing with respect to that question. The remainder of the reasons are attacks upon holdings with respect to conception and reduction to practice by Mitchell.

It is difficult to understand reason No. 3, but at least it is not sufficiently specific to allege error with respect to the board's finding against Hennion's claimed time of conception.

All the other reasons (some of which are ambiguous) are directed to matters which, so far as the record shows, were not presented to the board. Hennion, before the Primary Examiner, opposed the motion of Mitchell to add counts 3, 4, and 5 to the interference. His opposition was denied by the Primary Examiner and the question was not presented to the board. Had it been so presented, certain of the reasons of appeal before us might require consideration, but the question not having been before the board we may not consider it. The reference to the case of Mergen-

thaler v. Scudder, 11 App.D.C. 264, in reason No. 11 is general in character, and no language of that decision is pointed out which is claimed to be in point here. We have not found any holding there which appears to be relevant here.

The board confined Mitchell to his filing date for both conception and reduction to practice of count 5 just as it did Hennion, and no question is raised as to both applications disclosing the invention defined in that count.

We hold that the appeal must be dismissed because Hennion's reasons of appeal are not sufficient to confer jurisdiction on this court to consider it, and it will be so ordered.

Accompanying the motion to dismiss was a motion to strike that portion of Hennion's brief presented as appellant (he filed a consolidated brief as appellant and appellee) respecting count 5, substantially on the ground that he had therein so paraphrased the reasons of appeal as stated in the notice of appeal that the statements in the brief constituted an unauthorized amendment of the reasons of appeal.

We have examined the complained of subject matter in Hennion's brief and it is our conclusion that much of it is not relevant to the reasons of appeal as they are stated in the notice of appeal and this part has been wholly disregarded by us in our decision. However, the irrelevant parts are intertwined with some matter which appears pertinent and it is difficult to separate the bad from the good in order formally to enter a proper order to strike. There is nothing scandalous in the brief and no language the tone of which is offensive. Since we have wholly disregarded the irrelevant portions, no important end would be served by a formal order to strike and the motion to do so is denied.

To recapitulate, the decision of the board in Appeal No. 4802 awarding priority to Hennion as to counts 1, 2, 3, and 4 is affirmed; the appeal of Hennion (No. 4803), involving count 5 is dismissed, and the motion to strike the brief of Hennion is denied.

LENROOT, Associate Judge, participated in the original decision of this case, but resigned before the petition for rehearing was filed and considered.